We each will have 15 minutes, and you may begin when you're ready. Thank you, Your Honor. Good morning. May it please the Court. My name is Peter Kozinets. I represent the appellants, Mark Enterprises, and their owners, Mark Dubois, Dylan Mouchel, and Joshua Spencer. I'd like to reserve a couple of minutes for rebuttal. This case involves a search for 100 percent of Mark Enterprises' electronic business records, essentially all of its business records, plus the smartphones of its employees, but it was based on probable cause involving only a tiny portion, less than one-half of 1 percent of the company's business. Well, you keep saying that, and I want to push back on it a little to see what your answer is. We read the search warrant together with the affidavit, correct? Yes. Well, it was incorporated. For overbreadth purposes, yes, although... It was incorporated into the... So the scope of the search warrant is constrained, I think, by what the affidavit says, is it not? You read the affidavit together with the warrant, that is correct, but that is not sufficient here to say...  Well, you can argue... I want to focus on this, and then you can tell me why the two of them together don't solve the problem. The affidavit, which is, what, 35 pages or something like that, describes in great detail the probable cause. I don't think you can test on appeal that there was probable cause to conduct some search. Some search, but certainly not extensive search. You can make your points in a minute, I just want to get to it. So now we get... I have to read the scope of the authorized search together with the affidavit, and the It won't say, all the record about Cooper is here, everything else is there. So we'll go through it, and then we'll segregate the stuff that doesn't deal with the subject that we... For which we have probable cause. The same thing strikes me as true for hard records. If you have probable cause to think that there's a hard record someplace of a dealing with Cooper, and they're in filing cabinets that don't... And they're not labeled Cooper transactions one and all non-Cooper transactions two, you've got to go through it and segregate the stuff that relates to the case and the stuff that doesn't. So I'm trying to figure out how a warrant could have been more limited, and in the sense that the person executing it wouldn't have to look through the whole electronic device or the whole set of hard records to find the evidence he was looking for. Well, there's... I mean, this raises basically all of the objections that we have to the search warrant here. First of all, the affidavit itself, the explanation of the electronic search protocols was a sort of boilerplate recitation that didn't specifically apply and wasn't tied to Mark Enterprises. So for instance here, the warrant that actually issued called for the search of all of the employee's personal electronic devices. But the affidavit search warrant protocols doesn't explain, it doesn't tie, it doesn't establish any nexus between all of the employees. Well, but you don't represent all the employees, so you can't... You can't... But... Wait, wait, wait. You can't raise an objection on their behalf. As to the managers, it does seem to be quite reasonable to think that records of dealership transactions might well be on their devices. I'd like to push back a little bit on the notion that we can't talk about the employees, because the employees all worked for Mark Enterprises. They were all present there, and the search shut down the entire business for several hours. And based on the alleged nexus between their devices and the business, that's why the officers... But wouldn't it have been shut down anyway if the employee devices had not been included? Because the managers were included and the business itself was included, which is the main point of it. I really don't understand how, not only that you don't represent them, but how they are even relevant to your argument. Well, because the search was so all-encompassing, it was such a giant dragnet, ostensibly to probe the entirety of Mark Enterprises' business operations, that it did reach the employees. And I think that does give... Well, but they're third parties as far as your clients are concerned, and you can't assert a third party's constitutional rights. Well, again, I just want to push back on that, that here, they're involved because they are employees of Mark Enterprises. The warrant called for a search of Mark Enterprises in its entirety, including all devices present, and that kind of, that dragnet encompassed... I also am not sure that I followed your response to Judge Hurwitz, because if I know or have reasonable, or if I have probable cause to believe that in your 100,000 documents in your business, there are 11 that demonstrate, that will be relevant to an ongoing criminal investigation, but I don't know where those 11 documents are. What's wrong with something that says, you may go look for those 11 documents in everything, because you don't know where they are yet, but you know they're somewhere? Why isn't that perfectly permissible? It has to be tied to the circumstances of the individual case. Here we're dealing with an incredibly large business that employs 200 people, three different locations, that do a lot of different things. That's exactly my hypothetical. There's a lot of stuff, but you don't know where the important criminal-related items are, so don't you have to go through a lot of stuff? Under this rationale, though, the government could go into any business, from a mom and pop store to Amazon, and say, well, we have reason to believe that one product you're selling is problematic, so now we demand to search and seize 100% of your records. No, no, you left something out of the equation. They have probable cause to believe, and by the way, it's not required in this case that Mark Enterprises did anything wrong. You'll agree with that. You can get a search warrant. You believe Judge Desai, somebody dropped off a bag of money at Judge Desai's house yesterday and said, please hold this on to me, because I can't get to the bank to deposit it, and the government has probable cause to think it's the proceeds of a bank robbery. It doesn't matter that she didn't do anything wrong. Go get the evidence. It matters here because the scope of the warrant was so incredibly wide. I want to get back to the scope of the warrant, but I have two questions on that. So what should the warrant have said? You're critical of this warrant. You say your position has to be this warrant is so deficient on its face that those executing it must have known it violated the Fourth Amendment.  What would a correctly designed warrant? Tell me what the language, not what your general complaints are, but tell me what the language in the warrant should have said. Okay. There has to be two things that are going on. First, the affidavit itself has to sufficiently explain why you need such broad search. And let's assume for a moment that I think it does, that the affidavit says we have reason to believe that Cooper. But the affidavit doesn't explain why you need to go through the entirety of Mark Enterprises' records and all of the devices. So do you think the affidavit has to say, before you've even gone to Mark Enterprises and looked, I know where the relevant documents are and I'm only seeking to search that place? Well, I think where the government has information that would allow it to narrow the scope of its warrant, that is certainly the case. What is that information? I guess I have the same problem. How could they have known that it was found in only Manager X's files or that it was in three people's files or that they would find it in the business records? I mean, how could they have known that before they conducted the search? I think you have to take a reasonable view of what you're doing with this incredibly large company. Well, it's not incredibly large. It's got three dealerships in Phoenix. Okay. I mean, incredibly large companies are like... They do a lot of different things. They sell new cars. They sell used vehicles. They sell cars and trucks. They sell all kinds of different... That still doesn't answer my question. How could they have known which particular items they should have been looking through to get to the Cooper-related fraudulent sales? Well, I think at a minimum, Your Honor, they should have focused on used vehicles, and they should have focused on vehicles only sold within the last year of the warrant when these 30 or so vehicles at issue were sold. So I think there are ways that you can build... The evidence was that your clients had dealt with Cooper from, what, 2005 on? No, that's not the evidence. I think they started buying cars at auction from Cooper. I think the records... Well, they bought cars at auction, but not specifically. They started dealing with Cooper in approximately early 2019. Right. Yeah, but they had been buying cars that originated from Cooper from a much earlier time. I'm not thinking about their guilt. I'm thinking about trying to find evidence that Cooper has been illegally importing cars, and I think the record indicates that they were buying cars that may have come from Cooper much earlier. I think 2015 was my recollection of that. Yeah, but certainly not just within a year of the warrant. Maybe it was 2015 and I said five, but... Yeah, but... Well, but you can look that up and maybe tell us when you get back up for rebuttal. The broader question I have is this. Mr. Ali, I guess, who is the only real defendant in this case, because if he's not liable, his supervisors aren't liable, has a 35-page affidavit. He goes to see a neutral magistrate. He asks for the issuance of a warrant, and the magistrate issues that warrant. Let's assume for a moment that he hasn't misrepresented anything to the magistrate. I don't think he has. You have some omission of additional things he might have said, but those relate to the possible guilt of Mark Enterprises as opposed to the possible guilt of Cooper. What's he supposed to do? The warrant comes back. He looks at it. He's supposed to say, oh my, this is an invalid warrant on its face. Why is he supposed to say that? Let's talk about the warrant again. Okay, so the warrant has several specific categories. Three, four, and five talk about... I'm sorry to interrupt you, but I think Judge Hurwitz's question is going to the issue of qualified immunity. And I'd like to hear from you on that issue, which is even if we were to agree with you that the warrant is overbroad in having obtained all of these devices and phones, et cetera, when the magistrate issues the warrant, isn't that the clearest indication that the officers acted objectively reasonably in executing the warrant? So how do we get past qualified immunity? So here, Agent Ellie was the person who was most knowledgeable about the investigation. He lived and breathed it, so to speak, whereas the magistrate reviewing the warrant just has a limited amount of time to look at it. In all of these cases that we've cited, the Cow Case, Center Art, SDI, Hill, and so forth, those were all magistrate-issued warrants, but there was still no reasonable reliance or no qualified immunity in those cases. And here, the sort of item number five, which talks about searching all of the data scooped up from all of these devices for evidence of the crimes, is clearly overbroad under existing Ninth Circuit precedent from the SDI case to the Cow, KOW case, even to the Ajani case. But I'm granting you the issue that it might be, for purposes of my question, that the warrant is overbroad. I'm asking about qualified immunity, which then sort of asks this question about whether any reasonable officer would not execute the warrant after a neutral magistrate has granted it. Because it's just too overbroad on its face. And that's just like the situation in the SDI case, where the court found that the individual five individual categories were too overbroad. They didn't discuss the details of what was under investigation, the times, the custodians, the specific activities, even though the warrant incorporated the affidavit, which contained that extensive discussion. SDI said, that's not enough. The warrant provisions have to have that. And they cited the Cow case, which talked about how unless, essentially, if the government has the, you know, knows about the location, the time, the custodians, the people involved, specific details, that has to be put into the warrant provision itself. You see that in the Ajani case, where there are several specific items that are listed, and then there's a call to search electronic data for those specific items. Let me go back to SDI for a second. SDI involves a motion to suppress. Yes. And the court, the appellate court, says you should have suppressed the seized evidence. How does that help me in telling me whether or not Mr. Ali should have known on the face of the warrant that it was invalid? Well, the kind of the qualified immunity and the good faith analyses are interconnected. There's a footnote in the message. I understand. So you're saying this court, once having held that some categories in a different warrant were overbroad, Mr. Ali should have known that his were overbroad. And what I'm wanting to ask you about, just as a preface to the question is, we get slapped on the head all the time by the Supreme Court for, sometimes in your previous job you got them to slap us in this way, for treating decisions at too broad a level of generality, as opposed to looking at a decision to see whether or not it involved facts close enough to this case to serve for qualified immunity purposes. So when I look at SDI, it involves a very different set of facts. It does stand for the proposition that a warrant can be overbroad, but I'm not sure why it told Mr. Ali that this warrant was overbroad. Well, I think it's not just SDI. I mean, there's a robust body of case law in the Ninth Circuit. Well, but they all deal with specific warrants and say they're overbroad. But how would he know from those cases that it was obvious that this warrant was overbroad? Because they stand for the clear proposition that each provision in the warrant has to be sufficiently specific. Even if there's an incorporated affidavit, you still have to scrutinize provision by provision. And the Adjani case is a perfect counterexample where you have specific items, travel records for a certain set period of time, or communications between the perpetrator and the victim, you know, or the evidence of the crime itself, the database that was, you know, the basis of the extortion. Those are specifically identified. Then the computer search term says, we're going to search his computers to look for those specific items. That's the kind of specificity that the Fourth Amendment requires. And we've, the KOW case, cow case. Justice, you're over time, and I know you wanted to reserve some time for rebuttal, so I'm going to let you have two minutes on the clock when you come back, but let's hear from the other side. Okay, thank you very much, Your Honor. Good morning, Your Honors. May it please the Court. Daniel Torrens for Special Investigator Dilsher Ali, Supervisor Reggie Grigsby, and Supervisor James Cope. I'd like to provide just a brief roadmap of our position in this case. In this, obviously, we're here talking about an appeal from summary judgment, and at the district court level, the three Fourth Amendment claims asserted under Section 983 were defeated. These were the claims for judicial deception, a claim for an unreasonable search and seizure, and then, of course, the supervisory liability claim that falls because of a lack of an underlying constitutional violation. I'd like to address... As I read the briefs, it's really only the second one that's an issue in front of us. I mean, supervisory liability would only follow if there were judicial liability. Correct, Your Honor. That's the claim that has the shortage. I don't see them raising a freestanding claim for judicial deception. I think what they're saying is that the affidavit for the warrant didn't say enough. Well, and let's be clear to my esteemed friend on the other side, because moments ago he said that there was an issue with the scope of the search warrant. The appellants in this case conceded an oral argument before the district court that the officers executed that search within the scope of the warrant issued by the neutral magistrate. So the issue that we're talking about here is whether the search warrant was overbrought. And we've already been talking a little bit this morning about issues of qualified immunity that the agents have in a case like this. Before we get to the issue of qualified immunity, your brief doesn't really attempt to distinguish this warrant from the warrants in Center Art and Cal. How do you distinguish the broad authorization to search and seize any computer, phone, iPad, or other digital device at the dealership from the authorization to search and seize all business records in those cases? Well, I think the distinction is specifically outlined by the district court judge in this case. The judge took an inordinate amount of time, in his opinion, outlining the issues with respect to the seizure of electronic devices. And consistent with the law that we have, this was a broad investigation. And we have to remember that this was an investigation brought to the Attorney General's office by consumer complaints. But in Center Art and Cal, there was a similar situation where it was a broad investigation and the court found that the warrant was overbroad in its scope because it was seeking to collect all of these different documents that could have been at least curtailed at the front end. Well, I think what we're talking about here is the investigation that was occurring. Remember, we had Homeland Security involved. We had Customs and Border Protection involved. This was a multi-agency investigation on multiple theories against multiple defendants. Why does that matter? Is it any different than if only the AG's office had been involved? The question Judge Desai is asking is, why is this case different than the one she's talking about? Because I think inherently what the appellants are arguing in this case are either that the appellees were not acting in good faith and the judicial deception claim clearly is a statement that— That's a different claim, so I'm not talking about that claim, about whether or not there were some misstatements made to the magistrate judge to induce them to enter the warrant or grant the warrant. I'm asking about the information in the warrant itself that allowed for the seizure of all of these things when the defendants, I think, made very clear that the consumers had found the vehicles that Mark Enterprises listed for sale online, and Mark had communicated with consumers over email regarding their complaints. So I don't know how that creates a fair probability that all computers contained evidence of the alleged crime. This point gets addressed in the affidavit because it specifically told— Well, the affidavit says that business records are often kept in digital form. And I must say, if I thought somebody was here representing the employees, I would have a very difficult time figuring out why you had probable cause to search the employees' digital devices. But there still seems something broad. Whether it's so plainly overbroad on its face or not, I don't know. But do you really need to search the digital devices of the managers in what year, 2020?  2019, to look for all transactions that might have involved Cooper? Why do you have probable cause to think that on the cell phones of the managers, there is evidence of this? Because these are transactions that can be reasonably tied to managers and other employees of Mark Enterprises. Again, the position by my esteemed opponent from the other side is that, hey— All your opponents are from the other side. Thank you, Your Honor. But there doesn't have to be a nexus to Mark Enterprises. No, I understand that. It's the vehicle. They don't have to have committed a crime. There doesn't have to be a nexus. You have to have probable cause to think that Mark Enterprises has evidence of the crime that you're investigating. And so I understand searching through Mark Enterprises records. That seems to me to make perfect sense. And you don't know where it is in Mark Enterprises records, so you have a protocol for going through it. But now I'm focusing on the managers and the employees. And why do you have probable cause to think that a car salesman has evidence of this crime? It is common sense that if vehicles are going to show up at a location for sale, as occurred in this case, that multiple employees may have the— Because sales were online. But the vehicles were on the lot. There's no evidence in the record that these were specifically online sales only. Let me tell you that I'm troubled by sort of these arguments that you're making that seem somewhat inconsistent. In response to my earlier question, you indicated that this is a broad investigation. There needs to be sort of a broad seizure of all of these different devices to be able to find out where there might be evidence. And on the other hand, you've argued in your briefs that the warrant makes clear that the search of electronic devices here was limited to searching for evidence of the crimes. So you're taking both of these positions, that the warrant is, in fact, limited, but it's okay if it was broad because it was a broad investigation. And I specifically want to ask you, where can you point me in the record to the limitation? As I read the warrants, there are some categories of items, such as the documents and communications, that contain a limitation. But the authorizations to search and seize all of the digital devices don't contain any limitation whatsoever. Can you tell me where you think there are limitations in the warrant with respect to the digital devices? Well, let me push back on one point respectfully, which is simply it's not an inconsistent position. The Attorney General's Office was working with other federal and state agencies with respect to different investigations. The Attorney General's investigation was based on consumer fraud. Customs and Border Patrol had different issues. Homeland Security had different issues. So now let me address your question with respect to the warrant. The warrant speaks for itself. This is very detailed. But I'm talking about the argument that you've made, that there are inherent limitations in the warrant. And I can find those limitations with respect to the documents and communications, but not with respect to the digital devices. The devices identified were those devices that would be commonly used in transactions tied to the vehicles that were for sale by the appellants in this case. I believe it was iPads, cellular devices, things like that. There weren't any identification of devices that would have been too broad from the investigation that was being offered in this case. So, for example, counsel, let me direct you to ER 509. This is the warrant where it describes the property with respect to the dealer deal jackets and electronic and paper form associated with any vehicle specifically manufactured for use in the Mexican market, including but not limited to the vehicle shown in Exhibit C, D, and E. That's fairly limited. You know exactly what you're looking for. You're identifying those things. But then when you go down to Roman numeral V, it says the data on the computer, CDs, flash drives, thumb drives, hard drives, smartphones, or other electronic storage devices in order to search for evidence of the crimes. That's it. There's no limiting principle whatsoever. Then if the argument then is that it's overbroad, then my agents, the appellees in this case, are still entitled to qualified immunity under Messerschmitt. There was a neutral magistrate who looked at this and approved this warrant, and the bar that is set for law enforcement in a situation like this is exceedingly high. The appellants would have to show that the agents in this case were plainly incompetent and would not have issued or asked to be issued or executed that warrant as they did in 2019. I've got a technical question, and I'm not sure I know the answer to it. People other than Mr. Ali executed the warrant, or in addition to Mr. Ali, correct?  Okay. They're not defendants in this case, correct? That is correct. The supervisors are defendants, but I think it's fair to read the complaint as saying, you should have done a better job after Mr. Ali got the warrant or instructing him how to get the warrant. So what do we do with – wouldn't a search have occurred anyway by people against whom there is no complaint being made without Mr. Ali's participation? In other words, what we have here is a warrant, and it's given a bunch of people executed. One of the people – several of the people executed, just all they can do is look at the warrant. They have no background information or whatever. Are they in a different situation than Mr. Ali, and how does that affect the case against him? Well, I don't think it does affect the case against Special Agent Ali. Ali was the prime driver on the investigation leading up to – So we should treat this search as essentially having been conducted by him. I think that's fair. I think it is too. The search warrant was issued, and for clarity with the panel, the search warrant was executed at three locations simultaneously, so clearly Ali couldn't be in all three locations at one time. So let me get to the – it's a variant of the question Judge Assay asked you. He says, I understand the search of Mark Enterprise's records, and I think probably I would read the warrant as saying even when we're looking at Mark Enterprise's digital records, we're looking for the same kind of information as when we're looking for their hard records. Is there really – what's the probable cause to think that on somebody's personal device, there's going to be a record that's not in Mark Enterprise's records? I mean, it just – it strikes me as overkill. I mean, if there had been nothing at all in Mark Enterprise's records, it would shock me that there was something on somebody's personal device. So why do you need to look at those personal devices? Well, and I think there's some confusion, or at least with respect to the arguments being put forth by the appellants. This was not a situation where the agents went to these locations and seized every single phone they could get their hands on and extracted data. There was a two-part issue. The agents arrived on site after a debriefing showing that this was essentially an administrative search warrant. That was the term that was used, although there was no legal definition for that. In fact, the pre-briefing, which is evidence in the record in this case, is that the instructions to the personnel were not to show up in RIAC. They were to cause a minimal business disruption in obtaining the information related to the warrant. But when you get on site as agents, you don't know who's doing what. So there was an initial lockdown of people not using devices. I understand, but there's more here. I mean, you view the warrant as saying we can take devices from individuals and then applying the protocol, go through them and look for evidence of the crime. I'm trying to figure out why in the world there's any reason to think there would be something, given the nature of the crime here, which is bringing large trucks into Arizona and selling them from the dealership's location, why would there be any reason at all to think there would be evidence on those devices that isn't in the records of Mark Enterprises? It relates to the ubiquitous use of technology. I mean, this was something that when you're talking about, we've talked here about online sales and communications. You know, the agents were able to, when they got that warrant, identify the scope of the investigation which they did and provided to a neutral magistrate information on why they needed that information at this particular site. And again, this was a multi-agency investigation on multiple different issues. The nexus to Mark was that's where the vehicles were. The information that was extracted from those devices was done by a former defendant, in this case by the name of Connell, who was a special agent trained in the extraction of data and limitation of that data, which is information that was part of the underlying case. I see that I'm out of time. Did the panel have any other questions for the appellees? I don't think so. Thank you, counsel. Thank you very much. Thank you, Your Honors. The Hill case addresses the questions that have been asked about, well, where is there probable cause to get to the cell phones of anybody involved in the search here? There isn't. There's no explanation in the affidavit at all that addresses that particular issue. And under cases like Hill and SDI and even in their progeny, there has to be an affidavit that explains that. That's not here. Moreover, there was some discussion about the judicial deception claim. That is a separate freestanding claim that we have made, and the affidavit is riddled with omissions and deceptions. Most glaringly, those that go to the alleged culpability of Mark Enterprises. Now, I know you've said – Why are you – why is that material? It doesn't matter. I know you've raised that question.  But it matters here because I think they used that to convince the magistrate, hey, let's go after their cell phones. Let's make this search as broad as possible. Let's paint Mark Enterprises in the worst possible light. But they didn't have the actual facts to back that up, and they admitted that in their depositions. So tell me where in the affidavit there's anything that alleges that Mark Enterprises was complicit in this scheme. I will tell you in paragraph 215, 26, 29, and 30, there are descriptions of Mark Enterprises selling these unsafe – allegedly unsafe vehicles to unwitting customers, to selling vehicles that aren't what they purport to be, because all parties involved, according to paragraph 2, were motivated by greed and profit and so forth. This is all stuff that is designed to put Mark Enterprises in the worst possible light. If the affidavit had said instead, Mark sold these vehicles, nobody disputes that, even you don't dispute that. We're not sure they did anything wrong, but they sold them and therefore they'll have evidence of the illegal importation. Right. Wouldn't the warrant have been exactly as broad as it was? No, not at all, Your Honor. Why? Because there wouldn't have been concern that, hey, maybe all of the employees, maybe the managers, maybe their personal cell phones might have something going on here that relates to the case. It's just – and the notion that you could just take such an exacting search here, I think it's just tied to these misrepresentations. We have four different agents who testified in deposition that at the time the affidavit was submitted, they didn't have probable cause that the employees of Mark Enterprises had done anything wrong. They didn't have the probable cause that Mark Enterprises was involved in the underlying scheme. And, in fact, just the opposite, Mark Enterprises had come to them and raised the issues to make sure that what they were doing was lawful. That's the opposite, by the way, getting back to qualified immunity, of the Messerschmitt case where the guy shot at his girlfriend because she had called the cops on him. Here, this is the exact opposite. It was Mark Enterprises that went to law enforcement. You see that in the deposition testimony of Ali, who wrote the affidavit, his supervisor, James Cope, Detective Lon Leaf from the state of Arizona, and Detective Pete Vasquez. They all recognized this. And Supervisor Cope is asked, you know, in his deposition, does this appear to be the activity of a co-conspirator? His answer, no. That's at 2 ER 226. Mr. Kuznets, you're over time now with the time that we've granted you. Can you make a closing statement, please? Thank you, Your Honor. This case involves just an incredibly overbroad warrant that is fundamentally at odds with decades of this court's precedence, going back to Caldwell, Mithilan, Cao, Center Arts, the Art Gallery case, and SDI, and Adjani, and so forth. These cases are 20 years old or more. It's clearly established here that warrant provisions have to have specific information tied into the criminal conduct at issue, not just incorporating general allegations from the affidavit. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel for your helpful argument this morning. The case just argued is submitted.
judges: GRABER, HURWITZ, DESAI